UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| PHYLLIS ROBINSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) NO. 3:19-cv-01092 |
| WILSON COUNTY SCHOOLS and JERRY PARTLOW, | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION

Wilson County Schools ("WCS") terminated Phyllis Robinson, one of its bus drivers, on May 23, 2018. (Doc. No. 33 at 6). Ms. Robinson sued WCS and her former supervisor, Jerry Partlow, under the Tennessee Human Rights Act and Title VII of the Civil Rights Act of 1964. (Doc. No. 22 ¶¶ 25–40). She alleged WCS and Mr. Partlow ("Defendants") discriminated against her based on her gender and race (African American). (Id.). She also claimed Defendants unlawfully retaliated against her for complaining about her discriminatory treatment. (Id.).

Before the Court is Defendants' Motion for Summary Judgment. (Doc. No. 28). Defendants argue discovery has left no genuine issues of material fact for trial, and contend they are entitled to judgment as a matter of law on all claims. (Doc. No. 29 at 5–9). Ms. Robinson concedes her gender discrimination claim against WCS and all her claims against Mr. Partlow. (Doc. No. 32 at 3). However, she argues summary judgment is not appropriate with respect to her retaliation and racial discrimination claims against WCS. (Id. at 4). For the following reasons, the Court will grant summary judgment regarding all claims except the racial discrimination claim against WCS.

1

## I. BACKGROUND

### A. Ms. Robinson's Tenure with Wilson County Schools

WCS hired Ms. Robinson as a bus driver in October 2013. (Doc. No. 33 at 1). Two years later, Mr. Partlow became Director of Operations for WCS. (Doc. No. 29-4 at 10–11). Mr. Partlow is white. (Doc. No. 37 at 4).

According to Ms. Robinson, Mr. Partlow did not like her, because she is "an educated black female and would not bow down to him." (Doc. No. 29-3 at 46). She alleges Mr. Partlow treated white drivers well, but "looked down on the few black drivers" at WCS and was "aggressive" toward her. (Id. at 41, 59, 76–77). Ms. Robinson complained to WCS personnel regarding her unfair treatment on multiple occasions. (Id. at 55, 60–63).

In 2016, a white student on Ms. Robinson's bus route became "disruptive." (Id. at 53; Doc. No. 33 at 6–7). He frequently used profanity and recorded Ms. Robinson while she was driving. (Doc. No. 29-3 at 53). Ms. Robinson asked WCS to remove the student from her bus. (Doc. No. 33 at 6). Instead, Mr. Partlow switched Ms. Robinson's route. (Doc. No. 29-3 at 54).

Due in part to her issues with Mr. Partlow and her switched bus route, Ms. Robinson decided to resign from WCS in July 2016. (Id. at 67; Doc. No. 33 at 1). Around a year later, her fellow bus drivers convinced her to return to work. (Doc. No. 29-3 at 69–71). WCS rehired Ms. Robinson in August 2017. (Doc. No. 33 at 2).

Ms. Robinson's relationship with Mr. Partlow apparently did not improve upon her return. In April 2018, according to Ms. Robinson, Mr. Partlow approached her at an elementary school and told her there was a "new sheriff in town" and "you people" must "learn to follow the new procedures." (Doc. No. 34-5 at 2). Ms. Robinson felt Mr. Partlow unfairly singled her out, because there were white drivers around to whom Mr. Partlow did not make similar comments. (Id.).

B.   Ms. Robinson's Termination

On May 11, 2018, Ms. Robinson was involved in an accident in which a mirror on the side of her bus and a mirror on another bus hit one another. (Doc. No. 33 at 2). No students were injured. (Doc. No. 29-5 at 22; Doc. 29-7 at 17). The other bus driver, Bobby McDonald, stopped driving and waited for a WCS bus mechanic, David Johnson, to arrive. (Doc. No. 33 at 2). Ms. Robinson did not immediately stop driving, but she did call Mr. Johnson to tell him about the accident before she finished her route. (Id. at 3).

The WCS Transportation Manual contains a section titled "Accident Reporting Procedures." (Id. at 4). One procedure states that, after an accident, drivers should "not move the bus unless instructed by a police officer or if [they] are in an unsafe position." (Id. at 5).

On May 17, 2018, WCS suspended Ms. Robinson while it investigated the accident. (Id. at 6). Six days later, WCS terminated Ms. Robinson "for failing to stop the bus and examine it and for failing to check on students on the bus after the accident." (Id.). WCS did not discipline Mr. McDonald in connection with the accident. (Doc. No. 37 at 5).

During the same year in which WCS terminated Ms. Robinson, two white drivers supervised by Mr. Partlow who were caught violating the WCS Transportation Manual, were not permanently terminated, and were permitted to return to work after being disciplined. (Doc. No. 34-4 at 2–3; Doc. No. 29-11 at 7).

C.   Procedural History

Ms. Robinson filed a Notice of Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on August 7, 2018. (Doc. No. 29-14 at 2). In her EEOC charge, she included claims for racial discrimination and retaliation, but did not include a gender discrimination claim. (Id.). The EEOC issued Ms. Robinson a Dismissal and Notice of Rights on

3

September 12, 2019, informing her that it was closing its file on her case and that she could sue on her claims in federal court. (Id. at 11).

Ms. Robinson filed a pro se complaint against Defendants in this Court on December 9, 2019. (Doc. No. 1). After retaining counsel, she filed the Amended Complaint ("Complaint") on May 15, 2020. (Doc. No. 22). The Complaint alleges Defendants terminated Ms. Robinson based on her race and gender. (Id. ¶¶ 25–30, 36–40). It also claims Defendants unlawfully retaliated against Ms. Robinson for complaining about discrimination by switching her bus route and later terminating her. (Id. ¶¶ 17–19, 31–35).

The parties participated in written discovery and depositions. (Doc. No. 25). Then, on May 7, 2021, Defendants filed their Motion for Summary Judgment. (Doc. No. 28).

## II. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where there is "evidence on which the jury could reasonably find for the plaintiff." Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)). A "scintilla of evidence in support of the plaintiff's position will be insufficient," and a "one-sided" record does not "require submission to a jury." See Anderson, 477 U.S. at 251–52.

At the summary judgment stage, the moving party "has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." Rodgers, 344 F.3d at 595. If the moving party meets its burden, the nonmoving party must "show specific facts that reveal a genuine issue for trial" to survive summary judgment. Laster v. City of Kalamazoo, 746 F.3d 714, 726 (6th Cir. 2014).

When evaluating a summary judgment motion, the Court must view the record "in the light most favorable to the nonmoving party," must accept that party's evidence "as true," and must "draw all reasonable inferences in [that party's] favor." Id. The Court "may not make credibility determinations nor weigh the evidence" in its analysis. Id. And although the Court "need consider only the cited materials," it "may consider other materials in the record" if it chooses. Fed. R. Civ. P. 56(c).

### III. ANALYSIS

#### A. Title VII and the Tennessee Human Rights Act Prohibit Retaliation and Status-Based Discrimination in Employment Settings.

Title VII of the Civil Rights Act of 1964 forbids "discrimination in employment because of race, color, religion, sex," and other characteristics. 42 U.S.C. § 2000e. It also "prohibits retaliatory conduct by an employer when an employee engages in protected activity." Brown v. VHS of Michigan, Inc., 545 F. App'x 368, 373 (6th Cir. 2013); see also 42 U.S.C. § 2000e-3. Employees engage in "protected activity" when they oppose practices "made unlawful under Title VII." Brown, 545 F. App'x at 373. So, for example, "complaining about discriminatory treatment" is a protected activity. See Eades v. Brookdale Senior Living, Inc., 401 F. App'x 8, 10 (6th Cir. 2010).

The Tennessee Human Rights Act ("THRA") was enacted to "[p]rovide for execution within Tennessee of the policies embodied in [Title VII]." Tenn. Code Ann. § 4-21-101. Hence, when analyzing claims made under both Title VII and the THRA, courts need only apply Title VII's legal frameworks. Mullins v. Goodyear Tire & Rubber Co., 291 F. App'x 744, 745 n.1 (6th Cir. 2008) ("The THRA is a state law analogue to Title VII and the statutes are analyzed identically.").

5

The legal frameworks applicable to Title VII cases vary depending on whether plaintiffs rely on "direct or circumstantial evidence." Ondricko v. MGM Grand Detroit, LLC, 689 F.3d 642, 649 (6th Cir. 2012). "Direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Id. (quoting Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 926 (6th Cir.1999)). Circumstantial evidence "is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." Id. Because Ms. Robinson's case relies on circumstantial evidence—which she concedes (Doc. No. 32 at 5)—the Court will only use principles applicable to claims based on circumstantial evidence.

### B. Ms. Robinson's Racial Discrimination Claim Against WCS Survives Summary Judgment.

Defendants request summary judgment regarding Ms. Robinson's racial discrimination claim against WCS. (Doc. No. 29 at 7–9). The Court will deny Defendants' request, for the following reasons.

The Court must apply the burden-shifting standard set in McDonnel Douglas Corp. v. Green, 411 U.S. 792 (1973) to the racial discrimination claim against WCS. See Jackson v. VHS Detroit Receiving Hosp., Inc., 814 F.3d 769, 775–76 (6th Cir. 2016) (noting the McDonnel Douglas standard applies where "a plaintiff relies on circumstantial evidence"). Under that standard, the "burden is first on the plaintiff to demonstrate a prima facie case of racial discrimination." Chen v. Dow Chem. Co., 580 F.3d 394, 400 (6th Cir. 2009). Then, the burden "shifts to the employer to offer a legitimate, non-discriminatory explanation for its actions." Id. If the employer offers a legitimate explanation, "the burden shifts back to the plaintiff to show pretext–i.e. that the employer's explanation was fabricated to conceal an illegal motive." Id.

6

Defendants argue summary judgment is warranted because they have offered a non-discriminatory explanation for Ms. Robinson's termination that she has not rebutted. (Doc. No. 29 at 7–8). They cite Ms. Robinson's alleged violations of WCS policies in the wake of the May 2018 bus accident as the reason they terminated her. (Id.). Defendants contend Ms. Robinson cannot show that reason was pretextual, because it is "fully supported by documented proof as well as a video of the incident." (Id. at 8).

Defendants' argument fails because Ms. Robinson has, in fact, produced evidence that "casts doubt" on their rationale for her termination. Chen, 580 F.3d at 400 n.4. To pass summary judgment, a plaintiff need only present evidence sufficient to "rebut, but not to disprove, the defendant's proffered rationale." Blair v. Henry Filters, Inc., 505 F.3d 517, 532 (6th Cir. 2007). Evidence that the rationale "(1) has no basis in fact; (2) did not actually motivate the defendant's challenged conduct; or (3) was insufficient to warrant the challenged conduct" prevents summary judgment. McKibbens v. Metro. Gov't of Nashville, No. 3:17-CV-01110, 2018 WL 6696990, at *4 (M.D. Tenn. Dec. 20, 2018).

Ms. Robinson has offered evidence that her policy infractions were "insufficient to warrant" her termination. Id. An infraction is insufficient to warrant termination where "similar action was not taken against a similarly-situated employee" who was "outside of [plaintiff's] protected class." Gunn v. Senior Servs. of N. Kentucky, 632 F. App'x 839, 847–48 (6th Cir. 2015). Here, the record shows that during the same year WCS terminated Ms. Robinson, two white bus drivers supervised by Mr. Partlow were caught using cell phones while driving. (Doc. No. 34-4 at 2–3). That violates WCS' Transportation Manual, which "strictly prohibit[s]" cell phone use while operating a bus. (Doc. No. 29-11 at 7). Yet, despite the white drivers' infractions, WCS permitted those drivers to return to work after being disciplined. (Doc. No. 34-4 at 2). Because the white

7

drivers' infractions were of "comparable seriousness" to Ms. Robinson's infractions,[1] and the white drivers were treated more leniently than Ms. Robinson, a jury might reasonably find Ms. Robinson's infractions were insufficient to warrant her termination. See Wright v. Murray Guard, Inc., 455 F.3d 702, 710 (6th Cir. 2006) (quoting Clayton v. Meijer, Inc., 281 F.3d 605, 611 (6th Cir.2002)).

Other materials produced by the parties reinforce Ms. Robinson's argument that her policy violations were insufficient to warrant her termination. Defendants have agreed that Ms. Robinson "was not being considered for termination prior to the accident" and there "were no other major issues with [her] job performance." (Doc. No. 37 at 2). And Mr. Partlow admitted in his deposition that neither bus accidents, nor employee policy violations, are grounds for automatic termination at WCS.[2] (Doc. 29-4 at 31–32). Viewed in the light most favorable to Ms. Robinson, this evidence undermines Defendants' non-discriminatory claim that Ms. Robinson's bus accident and policy violations were enough to justify WCS' decision to terminate her.

Because a jury could reasonably find for Ms. Robinson on her racial discrimination claim against WCS, the Court will deny summary judgment on that claim.

    C.    <u>Defendants Are Entitled to Summary Judgment Regarding Ms. Robinson's Claim that Her Termination Was an Act of Unlawful Retaliation.</u>

Defendants argue summary judgment is appropriate on Ms. Robinson's claim that her termination constituted retaliation under Title VII. (Doc. No. 29 at 8–9). The Court agrees.

---

[1] If anything, the white drivers' policy violations were worse than Ms. Robinson's violations. The WCS Transportation Manual threatens "immediate termination" for cell phone use. (Doc. No. 29-11 at 7). It has no similar language regarding Ms. Robinson's violations. (Id. at 19).

[2] In fact, WCS bus accidents are apparently quite common. There are "between 75 and 100" per year, according to Mr. Partlow. (Doc. No. 29-4 at 31–32).

A plaintiff must at least make a "prima facie showing on [a] retaliation claim" to survive summary judgment. See Ceckitti v. City of Columbus, 14 F. App'x 512, 517 (6th Cir. 2001). To do so, a plaintiff must demonstrate the following: (1) "she engaged in activity protected by Title VII," (2) "this exercise of protected rights was known to defendant," (3) "defendant thereafter took adverse employment action against the plaintiff," and (4) "there was a causal connection between the protected activity and the adverse employment action." Morris v. Oldham Cty. Fiscal Ct., 201 F.3d 784, 792 (6th Cir. 2000).

Defendants argue Ms. Robinson has not presented a prima facie retaliation case because "there is no causal connection in this case." (See Doc. No. 29 at 9). Causal connection exists where a "protected activity was a but-for cause of the alleged adverse action by the employer." Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 362 (2013). Put differently, the employee must show the adverse action "would not have occurred" if the employee had not participated in the protected activity. Russell v. Kloeckner Metals Corp., No. 3-13-0316, 2014 WL 1515527, at *3 (M.D. Tenn. Apr. 18, 2014). An employee's "conclusory allegations" made "without citing specific incidents or evidence" are "insufficient to establish a causal connection." Goehring v. FedEx Kinko's Off., No. 04-2680 MA/V, 2007 WL 9706299, at *10 (W.D. Tenn. Jan. 19, 2007).

The Court finds Ms. Robinson has not presented specific evidence that her protected activity was a but-for cause of her termination. Her attempt to prove causation using similarly situated employees (Doc. No. 32 at 13) fails because she does not identify any similarly situated employee who did not engage in protected activity who received more favorable treatment than her. Evidence of but-for causation includes evidence of "temporal proximity" between an employee's protected activity and an employer's adverse action. Kenney v. Aspen Techs., Inc., 965 F.3d 443, 449 (6th Cir. 2020). It also includes evidence that an employer subjected an

employee to "heightened scrutiny" after a protected activity. Id. Ms. Robinson has shown evidence of neither.

*First*, there is no evidence that WCS terminated Ms. Robinson soon enough after any of her complaints to warrant an inference of retaliation. The period of time between a protected activity and an adverse employment action that supports a retaliation inference is "usually less than six months." Parnell v. West, 114 F.3d 1188, 1188 (6th Cir. 1997); see also Imwalle v. Reliance Med. Prod., Inc., 515 F.3d 531, 550 (6th Cir. 2008) ("In this circuit, a period of more than four months was found to be too long to support an inference of causation."). But Ms. Robinson has not shown that WCS terminated her within six months of any complaint she made. Ms. Robinson first complained of unfair treatment around the time she resigned in July 2016. (See Doc. No. 29-3 at 60; Doc. No. 29-9 at 1). And her deposition testimony indicates that most (or all) of her complaints occurred near that time.[3] (Doc. No. 29-3 at 60–63). Those complaints are too far from her termination, two years later, to show retaliation. Parnell, 114 F.3d at 1188; Imwalle, 515 F.3d at 550. Plus, while it is theoretically possible Ms. Robinson also made complaints closer to her termination, she has identified no evidence supporting that inference. That is dispositive, because a "metaphysical doubt as to the material facts" will not prevent summary judgment. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

*Second*, the Court cannot infer retaliation based on how Ms. Robinson was treated at work, because there is no evidence she was subject to heightened scrutiny after her protected activity. Courts have inferred retaliation where, for example, the plaintiff produced evidence that they were

---

[3] Ms. Robinson's May 2018 letter complaining of discrimination (Doc. No. 34-5) cannot have served as the basis for retaliation because it was submitted *after* WCS terminated her. Although the letter is dated days before her termination, it directly describes her termination. (Id. at 34-5 at 2–3).

10

given "more frequent disciplinary writeups" or were the target of "unwarranted criticism" after filing a discrimination complaint. Moore v. KUKA Welding Sys. & Robot Corp., 171 F.3d 1073, 1080 (6th Cir. 1999). Ms. Robinson has presented no such evidence. Although she alleges unkind and unfair treatment at Mr. Partlow's hands, she does identify evidence that the treatment began, or became more severe, in response to her complaints. Viewing the record in the light most favorable to Ms. Robinson, it appears Mr. Partlow was consistently unfair to her both before and after her complaints. (See, e.g., Doc. No. 29-3 at 52–55, 58–61). Although this may support Ms. Robinson's discrimination claim, it does not support her retaliation claim. See Nassar, 570 U.S. at 360 (holding that "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e–2(m)," which applies to race-based discrimination cases).

Because Ms. Robinson presented no specific evidence that would allow a jury to find in her favor on her claim that her termination constituted retaliation, the Court will grant summary judgment with respect to that claim. See Eng. v. Gen. Dynamics Info. Tech. Co., No. 3:11-CV-0347, 2012 WL 4506016, at *9 (M.D. Tenn. Sept. 28, 2012), aff'd, 536 F. App'x 537 (6th Cir. 2013) (citations and quotations omitted) ("Because in his responses to the summary judgment [motion] and statement of undisputed facts Plaintiff has not set forth specific facts showing that there is a genuine issue for trial on the retaliation claim, the court will grant Defendant's motion for summary judgment on this claim.").

D. Summary Judgment is Warranted on Ms. Robinson's Claims that Are Based on Discriminatory or Retaliatory Acts that Occurred Before October 11, 2017.

Defendants argue judgment as a matter of law is required regarding Ms. Robinson's claims premised on discriminatory or retaliatory acts that occurred before October 11, 2017, because those claims are time-barred. (Doc. No. 29 at 5–6; Doc. No. 36 at 1–2). In particular, Defendants

11

contend the Court should dismiss as untimely Ms. Robinson's claim that Defendants unlawfully retaliated against her for complaining of unfair treatment by switching her bus route before she resigned in 2016. (Id.). Again, the Court agrees.

"As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in [her] EEOC charge." Younis v. Pinnacle Airlines, Inc., 610 F.3d 359, 361 (6th Cir. 2010). Ms. Robinson was required by statute to file her EEOC charge "within three hundred days after the alleged unlawful employment practice occurred."[4] 42 U.S.C. § 2000e-5. Ms. Robinson filed her EEOC charge on August 7, 2018. (Doc. No. 29-14 at 2). Hence, as a matter of law, claims based on discriminatory or retaliatory acts that occurred over three hundred days prior (i.e., before October 11, 2017) are time-barred. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 102 (2002) ("[E]ach discrete act starts a new clock for filing charges alleging that act.").

The parties agree that WCS switched Ms. Robinson's bus route before October 11, 2017. (Doc. No. 33 at 6–7). So, summary judgment is appropriate with respect to Ms. Robinson's claim that Defendants switched her route in an act of unlawful retaliation.

Notably, Ms. Robinson may still be able to submit evidence at trial regarding her switched bus route and any other relevant events that occurred before October 11, 2017. Employees are not prohibited from using an employer's "prior acts as background evidence in support of a timely claim," even if independent claims based on those acts are time-barred. Morgan, 536 U.S. at 113.

---

[4] The parties do not dispute that the three-hundred-day statute of limitations, applicable to cases in which "the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief," 42 U.S.C. § 2000e-5, controls in this case, (Doc. No. 29 at 5–6; Doc. No. 32 at 5–13; Doc. No. 36 at 1).

12

E. <u>Defendants Are Entitled to Summary Judgment Regarding Ms. Robinson's Gender Discrimination Claims.</u>

Defendants argue summary judgment is appropriate with respect to Ms. Robinson's gender discrimination claims because she did not raise them in her EEOC charge and thereby failed to exhaust her administrative remedies. (Doc. No. 29 at 6). Ms. Robinson does not contest this conclusion. (Doc. No. 32 at 3). The law supports Defendants' argument. See Younis, 610 F.3d at 361. Therefore, the Court will grant judgment as a matter of law regarding Ms. Robinson's gender discrimination claims.

F. <u>Summary Judgment Is Appropriate Regarding All Claims Against Mr. Partlow.</u>

Defendants also argue summary judgment is warranted on all claims against Mr. Partlow because he "cannot be held personally liable for violations of Title VII or the THRA." (Doc. No. 29 at 7). The law supports Defendants' argument. Wathen v. Gen. Elec. Co., 115 F.3d 400, 405 (6th Cir. 1997) ("We now hold that an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII."). And Ms. Robinson concedes her claims against Mr. Partlow. (Doc. No. 32 at 3). Therefore, the Court will grant summary judgment regarding all claims against Mr. Partlow in his individual capacity.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. No. 28) will be denied regarding Ms. Robinson's racial discrimination claim against WCS and granted regarding all other claims.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE